N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

THE NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Plaintiff- Appellant v. CULLY'S MOTORCROSS PARK, INC., and LAURIE VOLPE Defendants-Appellees

No. COA11-651

(Filed 1 May 2012)

## 1. Malicious Prosecution—initiation of proceedings—competent evidence to support determination

The trial court did not err in a malicious prosecution counterclaim by concluding that plaintiff initiated proceedings against defendant. There was competent evidence in the record to support the trial court's determination that except for the efforts of plaintiff, it was unlikely that there would have been a criminal prosecution of defendant.

## 2. Malicious Prosecution—probable cause for prosecution—lacking

The trial court did not err in a counterclaim for malicious prosecution by finding probable cause lacking to criminally charge defendant with obtaining property by false pretenses. There was competent evidence in the record for the trial court to conclude that a reasonable person would not have believed defendant was hiding information that she had already provided to plaintiff.

## 3. Malicious Prosecution—immunity—actual malice not required—malice inferred from lack of probable cause

The trial court did not err in a malicious prosecution counterclaim by failing to find that plaintiff was immune from civil liability. N.C.G.S. § 58-79-40(c) does not require actual malice and malice may be inferred from probable cause.

## 4. Unfair Trade Practices—malicious prosecution claim—in or affecting commerce—judgment proper

The trial court did not err by entering judgment for defendant on her counterclaim for unfair and deceptive trade practices. Defendant's claim was premised on her malicious prosecution claim, which was entered without error. Also, plaintiff failed to object to the trial court's statement that he stipulated to the fact that insurance was in or affecting commerce. Further, the trial court was correct in concluding that plaintiff, by engaging in the unfair and deceptive act of malicious prosecution in order to gain leverage in the civil action, caused defendant to suffer damages.

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

**5. Immunity—Noerr-Pennington doctrine—not applicable to the facts**

The trial court did not err in a malicious prosecution case by concluding that the *Noerr-Pennington* doctrine, which immunizes conduct undertaken to influence or petition government bodies from antitrust liability, was inapplicable. The action underlying the N.C.G.S. § 75-1.1 claim was plaintiff's instigation of a malicious prosecution without probable cause, which was done for the improper purpose of gaining leverage in a lawsuit, and the doctrine did not apply to these facts.

**6. Malicious Prosecution—unfair and deceptive trade practices—additional element—separate injuries**

The trial court did not err by concluding that defendant suffered separate injuries resulting from a malicious prosecution and an unfair and deceptive trade practices claim. Plaintiff failed to address the trial court's conclusion that there was a separate, additional element involved in the N.C.G.S. § 75-1.1 claim.

**7. Attorney Fees—unfair trade practices – properly awarded**

The trial court did not err in awarding attorney fees in favor of defendant where she prevailed on her unfair and deceptive trade practices claim.

Appeal by Plaintiff from orders and judgment entered 7 February 2011 by Judge Wayland J. Sermons, Jr. in Superior Court, Wilson County. Heard in the Court of Appeals 8 November 2011.

*Harris, Creech, Ward and Blackerby, P.A., by Jay C. Salsman, C. David Creech, and Luke A. Dalton, for Plaintiff-Appellant.*

*Hemmings & Stevens, PLLC, by Aaron C. Hemmings and M. Cory Howes, for Defendants-Appellees.*

*Young Moore and Henderson, P.A., by Glenn C. Raynor and Andrew P. Flynt, for North Carolina Association of Defense Attorneys, amicus curiae.*

*Schulz Stephenson Law, by Bradley N. Schulz; and Wait Law, P.L.L.C., by John L. Wait, for North Carolina Advocates for Justice, amicus curiae.*

McGEE, Judge.

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

The North Carolina Farm Bureau Mutual Insurance Company (Plaintiff) filed a complaint on 24 February 2009 against Cully's Motorcross Park, Inc. (Cully's); Laurie Volpe (Ms. Volpe) (together, Defendants); and Louis Volpe (Mr. Volpe). Plaintiff sought declaratory judgment regarding Plaintiff's liability as insurer of real property owned by Defendants and Mr. Volpe. Defendants, along with Mr. Volpe, filed a motion for a change of venue and an answer and counterclaim on 23 March 2009. They asserted claims of breach of contract, unfair claims settlement practices, bad faith, and unfair and deceptive trade practices.[1] Defendants also sought punitive damages. They filed an amended answer and counterclaim on 22 June 2009, adding an additional claim for malicious prosecution.

Mr. Volpe died in the summer of 2010 and, prior to trial, Plaintiff dismissed Mr. Volpe as a party. Following a bench trial, the trial court entered judgment on 7 February 2011. The trial court ordered, *inter alia*, that Ms. Volpe recover the sum of $26,075.00 from Plaintiff for Ms. Volpe's malicious prosecution claim, treble damages in the amount of $30,000.00 for her Section 75-1.1 claim, and attorney's fees. Plaintiff appeals.

## I. Factual Background

The following facts in this case are undisputed. Ms. Volpe was the president and sole shareholder of Cully's, a dirt bike and cart racing track originally based in Florida. Mr. Volpe was the secretary of Cully's. Cully's purchased an historic building (the Building) in Wilson from James Skinner (Mr. Skinner) for $31,500.00 on 19 December 2007. Cully's paid $25,000.00 in cash and executed a purchase money note and deed of trust in the amount of $6,500.00. Plaintiff issued an insurance policy to Cully's, insuring the Building with a policy limit of $60,000.00.

During the late evening of 5 September and early morning hours of 6 September 2008, the Building burned in a fire. A red gas can labeled "Race Fuel" was found, tilted on its side, in a room at the end of a "burn trail" that led from the fire. Cully's owned similar red gas cans. Randall Loftin (Mr. Loftin), an investigator for Plaintiff's Special Investigations Unit, was in charge of investigating Cully's insurance claim related to the Building.

---

1. We note that the parties in this case, as well as the trial court, refer to "unfair and deceptive trade practices" claims. Because N.C. Gen. Stat. § 75-1.1 refers to "unfair or deceptive acts or practices in or affecting commerce[,]" and no longer contains the word "trade," we will refer to Defendants' claims as "Section 75-1.1 claims." *See* N.C. Gen. Stat. § 75-1.1 (2011); *see also Talbert v. Mauney*, 80 N.C. App. 477, 343 S.E.2d 5 (1896).

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

Both Mr. Volpe and Ms. Volpe provided a recorded statement to Plaintiff on 3 October 2008. In their statements, they each denied knowledge of the fire. Mr. Volpe told Plaintiff's agents that Cully's intended to sell the remnants of the Building to "a Hispanic male for salvage value." Ms. Volpe, on behalf of Cully's, executed a "Sworn Proof of Loss" statement for the damage to the Building. In her proof of loss statement, Ms. Volpe did not indicate that the Building was subject to a mortgage, but she did disclose that Cully's owed $6,500.00 on the Building. At trial, Ms. Volpe testified that "she did not consider a purchase money deed of trust due in one year that did not require monthly payments[] to be a mortgage."

Plaintiff requested that Mr. Volpe and Ms. Volpe submit to examinations under oath. Ms. Volpe complied on 5 January 2009, but Mr. Volpe refused to submit to an examination. Mr. Loftin became convinced that Mr. Volpe and Ms. Volpe were experiencing financial difficulties and had attempted to hide the deed of trust on the Building from Plaintiff. Plaintiff denied Cully's claim on 23 February 2009.

After Plaintiff filed its complaint, and Defendants and Mr. Volpe filed their answer, Mr. Loftin met with Sergeant J.C. Lucas (Sgt. Lucas) of the Wilson Police Department on 16 April 2009. Mr. Loftin provided Sgt. Lucas with documentation of the sale of the Building for salvage, as well as documentation of the deed of trust in the amount of $6,500.00. Mr. Loftin also informed Sgt. Lucas that Ms. Volpe had sold the Building to Jose Giron (Mr. Giron) without paying off the deed of trust. Sgt. Lucas thereafter met with Mr. Giron, who confirmed that he had purchased the Building.

Sgt. Lucas executed a warrant for the arrest of Ms. Volpe for obtaining property by false pretenses, on the ground that Ms. Volpe had allegedly sold the Building to Mr. Giron without paying the $6,500.00 secured by the deed of trust. Ms. Volpe retained an attorney and the charges against her were dismissed on 18 May 2009. Defendants and Mr. Volpe amended their answer and counterclaim on 22 June 2009, adding a claim for malicious prosecution.

The trial court conducted a bench trial during the week of 6 December 2010. Prior to entry of judgment, Plaintiff filed a motion to amend the pleadings and to make additional findings, or in the alternative, for a new trial. The trial court granted Plaintiff's motion to amend the pleadings in order to consider the issue of the *Noerr-Pennington* doctrine. In an order entered 7 February 2011, the trial court concluded that the *Noerr-Pennington* doctrine was inapplicable

216 IN THE COURT OF APPEALS

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

as a defense. In its judgment, also entered 7 February 2011, the trial court ordered: (1) that Defendants recover nothing from Plaintiff as to Defendants' breach of contract claim; (2) that Defendants recover nothing from Plaintiff as to Defendants' Section 75-1.1 claim based on Plaintiff's refusal to pay the insurance claim; (3) that Ms. Volpe recover from Plaintiff $26,075.00 for malicious prosecution; and (4) that Ms. Volpe recover from Plaintiff treble damages of $30,000.00 for her Section 75-1.1 claim arising from the malicious prosecution claim. The trial court also awarded Ms. Volpe attorney's fees in the amount of $29,752.50 and costs in the amount of $2,400.28.

## II. Issues on Appeal

Plaintiff raises the following issues on appeal: (1) whether the trial court erred by determining that Plaintiff initiated criminal proceedings against Ms. Volpe; (2) whether the trial court erred by finding probable cause lacking to charge Ms. Volpe with obtaining property by false pretenses; (3) whether Plaintiff was entitled to immunity under N.C. Gen. Stat. § 58-79-40; (4) whether the trial court erred by entering judgment in favor of Ms. Volpe as to her Section 75-1.1 claim; (5) whether the *Noerr-Pennington* doctrine immunized Plaintiff from a Section 75-1.1 claim; (6) whether the trial court erred in awarding Ms. Volpe damages for both her Section 75-1.1 claim and her malicious prosecution claim; and (7) whether the trial court erred in granting Ms. Volpe attorney's fees under N.C. Gen. Stat. § 75-16.1.

## III. Standards of Review

When reviewing a bench trial, the standard of review is " 'whether there was competent evidence to support [the trial court's] findings of fact and whether its conclusions of law were proper in light of the facts.' " *City of Wilmington v. Hill*, 189 N.C. App. 173, 175, 657 S.E.2d 670, 671-72 (2008) (citation and alteration omitted). "The trial court's conclusions of law are reviewed *de novo.*" *Id.* at 176, 657 S.E.2d at 672. "Whether probable cause exists is a mixed question of law and fact, but where the facts are admitted or established, the existence of probable cause is a question of law for the court." *Best v. Duke University*, 337 N.C. 742, 750, 448 S.E.2d 506, 510 (1994).

## IV. Malicious Prosecution

"To prove a claim for malicious prosecution, a plaintiff must establish four elements: (1) the defendant initiated the earlier proceeding; (2) malice on the part of the defendant in doing so; (3) lack of probable cause for the initiation of the earlier pro-

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

ceeding; and (4) termination of the earlier proceeding in favor of the plaintiff."

*Kirschbaum v. McLaurin Parking Co.*, 188 N.C. App. 782, 789, 656 S.E.2d 683, 687-88 (2008) (citation omitted).

### a. Initiation

**[1]** Plaintiff first argues that it did not initiate the criminal proceedings against Ms. Volpe. Plaintiff argues that "[b]y merely giving honest assistance and information to law-enforcement, [Plaintiff] did not initiate the criminal proceeding against [Ms.] Volpe." Plaintiff contends that the trial court's findings of fact did not support its conclusions of law. Plaintiff challenges the following findings of fact by the trial court:

> 44. That Plaintiff instituted or caused to be instituted a criminal proceeding[] without probable cause, said criminal proceeding being Wilson County criminal case number 09 CR 52084, charging [Ms.] Volpe with Obtaining Property with False Pretenses.
>
> 45. That Plaintiff instituted or caused to be instituted said criminal proceedings against [Ms.] Volpe with malice.
>
> . . . .
>
> 61. That Plaintiff did cause to be instituted a criminal proceeding against [Ms.] Volpe, when it had full knowledge of the debt owed [Mr.] Skinner upon the [Building], by being told of the same by [Ms.] Volpe in her recorded statement on October 3, 2008, and further with full knowledge that [Mr.] Loftin, the investigator for the Plaintiff, had been told that the property had been sold to someone else, as early as October 3rd, 2008,and further was present at the October 3, 2008 statements given to the Plaintiff concerning the debt and the fact that the structure had been sold to a Hispanic male for salvage value, but did not release or pursue this information to Detective Lucas or any other officer of the Wilson Police Department until April 2009, after a counter claim had been filed by [Ms.] Volpe and Cully's Motorcross Park Inc against Plaintiff.
>
> 62. That the acts of the Plaintiff in providing all such information, which does not amount to a crime, to Detective J.C. Lucas, an experienced officer but unfamiliar with fire investigations, were designed to achieve leverage in this action, and the [c]ourt specifically finds that it was highly unlikely that

218          IN THE COURT OF APPEALS

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

Detective Lucas would have ever known about all the circumstances concerning the debt to [Mr.] Skinner and the sale to [Mr.] Giron, and further never have pursued criminal charges based upon that evidence, without the instigation of Plaintiff through [Mr.] Loftin.

Plaintiff also cites the following findings of fact:

34. That on or about April 16, 2009, [Mr.] Loftin met with Detective J.C. Lucas of the Wilson Police Department, at the Wilson Farm Bureau office, at Loftin's request. Detective Lucas had been out on sick leave for a number of months and was just returning to the case. Detective Lucas was mainly a sex offense investigator and this was his second fire case. Loftin provided Lucas with the real estate documents showing the $6,500 debt and the deed to Giron.

35. That Loftin informed Lucas of the conveyance of the property to Mr. Giron and the failure of [Ms.] Volpe to pay off the $6500 owed Mr. James Skinner pursuant to the terms of the deed of trust.

Plaintiff argues that findings of fact 34 and 35 "amount to nothing more than merely providing honest assistance and information, which is insufficient to establish initiation."

Plaintiff's argument that it did not initiate the criminal proceedings against Ms. Volpe relies on *Harris v. Barham*, 35 N.C. App. 13, 239 S.E.2d 717 (1978) and *Shillington v. K-Mart Corp.*, 102 N.C. App. 187, 402 S.E.2d 155 (1991). In *Harris*, this Court held that the trial court had properly granted summary judgment in favor of the defendant on the following facts. A person using the plaintiff's name had opened a bank account and had written several checks which had been returned for insufficient funds. *Harris*, 35 N.C. App. at 14, 239 S.E.2d at 718. Raleigh police officers contacted the bank where the account had been opened, inquired about the account, and asked an officer of the bank, Mr. Mangum, to notify police officers if a person with the plaintiff's name came to the bank. *Id.* The plaintiff entered the bank to obtain traveler's checks, for which he paid cash. *Id.* at 15, 239 S.E.2d at 718. Mr. Mangum approached the plaintiff, asked his name, and requested that the plaintiff accompany him to a side room where he had the plaintiff write out his signature several times. *Id.* at 15, 239 S.E.2d at 718-19. Mr. Mangum informed the plaintiff of the account and the checks written thereon, and the plaintiff denied opening the account. *Id.* at 15, 239 S.E.2d at 718.

IN THE COURT OF APPEALS                219

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

The plaintiff was detained by police officers after the bank notified them of the plaintiff's presence. *Id.* at 15, 239 S.E.2d at 719. This Court held there was insufficient evidence that the bank, or its agents, had initiated the proceedings against the plaintiff, citing the following facts:

> It is undisputed that neither [Mr.] Mangum nor any other employee of the Bank ever signed any warrant or otherwise directly instituted any criminal proceeding against the plaintiff, nor did they procure anyone else to do so. Neither [Mr.] Mangum nor any other employee appeared at the preliminary hearing or before the grand jury. Indeed, the entire extent of [Mr.] Mangum's or the Bank's participation in this matter was to notify the police, as [Mr.] Mangum had been requested by them to do, when a person named George Harris came into the Bank. This he did only after information given him by the police and his own investigation indicated that someone using that name had perpetrated a fraud. This falls short of being the participation in a criminal prosecution required to establish the first element of a valid claim for malicious prosecution.

*Id.* at 16, 239 S.E.2d at 719. This Court concluded that the bank had merely given honest assistance to the police officers and reiterated that " '[m]erely giving honest assistance and information to prosecuting authorities . . . does not render one liable as a co-prosecutor.' " *Id.* (citation omitted).

In *Shillington*, this Court held that there was insufficient evidence of initiation, when the arresting "[o]fficer . . . testified that he and his supervisor decided to arrest plaintiff based on the information they received from defendant, but defendant's agents neither directed that they do so nor did defendant's agents press charges themselves, nor did they appear at the magistrate's office at any time." *Shillington*, 102 N.C. App. at 196, 402 S.E.2d at 160. The Court noted that the "[o]fficer . . . testified that he also considered the fact that plaintiff had entered an area he had been warned to stay out of." *Id.* The plaintiff in *Shillington* had been wandering around near a K-Mart store that had recently suffered tornado damage. *Id.* at 191, 402 S.E.2d at 157. The plaintiff worked near the K-Mart store and there was uncertainty as to whether the plaintiff had actually crossed onto K-Mart property when he was arrested. *Id.*

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

In the present case, Plaintiff contends that Sgt. Lucas initiated the criminal proceedings on his own accord. In support of this argument, Plaintiff cites the Restatement Second of Torts:

> When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable [for malicious prosecution] even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

Restatement (Second) of Torts § 653 cmt. g (1977). Plaintiff also argues that, when asked at trial whether Mr. Loftin or Plaintiff had initiated the criminal proceeding against Ms. Volpe, Sgt. Lucas gave the following answer: "No, no. . . . I have probable cause. I felt like I could win this case in court, and I wanted to go forward with it. That was my decision, my decision only." Plaintiff argues that "Sgt. Lucas's uncontroverted testimony establishes that the trial court erred in finding that [Mr.] Loftin's 'investigation' brought about the criminal charge."

In support of their counter-argument, Defendants cite *Williams v. Kuppenheimer Manufacturing Co.*, 105 N.C. App. 198, 412 S.E.2d 897 (1992). Citing *Williams*, Defendants argue that "where 'it is unlikely there would have been a criminal prosecution of [a] plaintiff' except for the efforts of a defendant, this Court has held a genuine issue of fact existed and the jury should consider the facts comprising the first element of malicious prosecution." In *Williams*, the plaintiff was a retail employee of the defendant company and had resigned after being confronted with a number of suspicious sales receipts. *Id.* at 198-99, 412 S.E.2d at 898-99. The plaintiff denied any wrongdoing, but an agent of the defendant company contacted the Charlotte Police Department and "turned over the evidence which [the agent] had compiled against plaintiff." *Id.* at 199, 412 S.E.2d at 899. This Court also noted the following facts:

> According to testimony of law enforcement officials, they relied on the evidence compiled by [the plaintiff's supervisor]. In the course of their investigation, law enforcement officials reviewed the materials provided by [the plaintiff's supervisor] and the only witnesses that Detective Job, the investigator for

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

the Police Department, contacted were the three people she talked to by telephone whose names had been furnished by [the plaintiff's supervisor] as being persons who had alterations performed on garments purchased that had been voided.

*Id.* This Court held that there was sufficient evidence of initiation to submit the question to the jury, conducting the following analysis:

Defendant brought all the documents used in the prosecution to the police. As discussed earlier, these documents included the eleven suspicious void sales, the three suspicious alteration tickets, and the names and addresses of witnesses to be contacted. From the record it appears the only additional investigation undertaken by the authorities was to contact the three individuals who had suspicious alterations performed. Law enforcement officials never interviewed other customers, store employees or plaintiff prior to the time of his arrest. Except for the efforts of defendant, it is unlikely there would have been a criminal prosecution of plaintiff. Under these circumstances, the trial court was correct in determining this was a factual matter for the jury.

*Id.* at 201, 412 S.E.2d at 900.

We find *Williams* more analogous to the facts before us. Mr. Loftin had all of the information he provided to Sgt. Lucas as early as 3 October 2008. On 16 April 2009, after Defendants' counterclaim was filed, Mr. Loftin called Sgt. Lucas and set up a meeting at which Mr. Loftin informed Sgt. Lucas of Ms. Volpe's actions. Sgt. Lucas thereafter interviewed Mr. Giron, and Ms. Volpe was then arrested. We find competent evidence in the record to support the trial court's determination that Plaintiff initiated the proceedings against Ms. Volpe on the grounds that: "Except for the efforts of [Plaintiff], it is unlikely there would have been a criminal prosecution of [Ms. Volpe]. Under these circumstances, the trial court was correct in determining this was a factual matter[.]" *Id.* at 201, 412 S.E.2d at 900. Thus, on the facts before us, we are not persuaded that the trial court erred in determining that Plaintiff initiated the proceedings against Ms. Volpe.

## b. Probable Cause

[2] Plaintiff also argues that "the trial court erred by finding probable cause lacking to criminally charge [Ms.] Volpe with obtaining property by false pretenses." Plaintiff contends that "[t]he test for determining probable cause in a claim for malicious prosecution . . .

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

is whether a reasonable man of ordinary prudence and intelligence would have believed there was probable cause, not whether a crime was in fact committed."

At trial, Mr. Loftin was asked during direct examination what crime he suspected Ms. Volpe of committing. Mr. Loftin testified that he thought "she had committed insurance fraud in an attempt, material misrepresentation with an attempt to hide the fact that there was a $6,500 payment that was due on this house with a deed of trust involved." However, the trial court found that Plaintiff "had been told as early as [Ms.] Volpe's statement on September 8, 2008, that [Defendants] owed $6,500 on the property." We conclude that there was competent evidence in the record for the trial court to conclude that a reasonable person would not have believed Ms. Volpe was hiding information that she had already provided to Plaintiff. In light of the testimony at trial, and the findings of fact made by the trial court, we find no error in the trial court's finding that probable cause was lacking.

## V.  Immunity Pursuant to N.C. Gen. Stat. § 58-79-40

[3]  Plaintiff argues that the trial court erred in failing to find, pursuant to N.C. Gen. Stat. § 58-79-40, that Plaintiff was immune from civil liability. N.C. Gen. Stat. § 58-79-40(c) (2011) provides in pertinent part:

> In the absence of fraud or malice, no insurance company (or insurance agency), or person who furnishes information on its behalf, shall be liable for damages in a civil action or subject to criminal prosecution for any oral or written statement made or any other action that is necessary to supply information required pursuant to this section.

Plaintiff contends that, in the absence of malice or fraud, it cannot be held liable for its own, or its agent's, conduct in providing information that the police requested.

Plaintiff asserts that: "All information provided by [Plaintiff] to the Wilson Police Department was supplied in accordance with [Plaintiff's] obligations under N.C. Gen. Stat. § 58-79-40." Plaintiff also argues that the "record is void of any allegation or evidence of fraud." Plaintiff next contends that, in order to overcome N.C.G.S. § 58-79-40 immunity, Defendants were required to show that Plaintiff acted with "actual malice[.]" Specifically, Plaintiff contends that "[a] holding that anything less than actual malice can overcome the immunity provided by § 58-79-40(c) would not only conflict with the common law

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

privilege, but would improperly frustrate the legislative intent behind enactment of the statute."

Plaintiff argues that "[t]he record is void of any evidence that [Plaintiff] acted with actual malice when it provided truthful information relevant to an incendiary fire, information it was statutorily obligated to provide[.]" Citing *Dobson v. Harris*, 352 N.C. 77, 86, 530 S.E.2d 829, 837 (2000), Plaintiff contends that "[a]ctual malice requires proof of ill-will or personal hostility, or a showing that the declarant published a statement with knowledge that it was false[.]"

However, we can find no cases interpreting N.C.G.S. § 58-79-40(c) that require "actual malice." The plain language of the statute is clear that immunity applies "in absence of fraud or malice[.]" N.C.G.S. § 58-79-40(c). In the present case, the trial court found that Mr. Lofton acted without probable cause. "Although a want of probable cause may not be inferred from malice, the rule is well settled that malice may be inferred from want of probable cause, *e.g.*, as where there was a reckless disregard of the rights of others in proceeding without probable cause." *Cook v. Lanier*, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966); *see also Dickerson v. Refining Co.*, 201 N.C. 90, 96, 159 S.E. 446, 450 (1931) ("Malice, in the sense in which it is used in actions for malicious prosecutions . . . is inferable from the absence of probable cause."). We therefore find Plaintiff's argument to be without merit.

## VI. Ms. Volpe's Section 75-1.1 Claim

[4] Plaintiff next argues that the trial court erred by entering judgment for Ms. Volpe as to her counterclaim under Section 75-1.1 because the claim was premised on the malicious prosecution claim. As we have held that the trial court did not err with respect to Ms. Volpe's malicious prosecution claim, Plaintiff's argument is without merit. Plaintiff also asserts that the acts which the trial court determined were unfair or deceptive were not "in or affecting commerce." Plaintiff contends that Mr. Lofton did not engage in commerce by merely reporting Ms. Volpe's conduct to the police. Defendants contend that Plaintiff stipulated to the actions as being involved in commerce. Plaintiff counters this argument by contending that it stipulated only to the business of insurance affecting commerce, and not to the alleged malicious prosecution affecting commerce.

The trial court held a conference with the parties to establish the issues the trial court would resolve. During the conference, the trial court enumerated each element of each claim brought by the parties,

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

and determined whether the elements would be listed among the issues to be determined by the trial court. When the trial court reached the issue of the Section 75-1.1 claim, the following exchange occurred:

[THE COURT:] 5. Did Farm Bureau participate in unfair and deceptive acts in the malicious prosecution of Laurie Volpe. We talked about that, and I think that that is allowable under the unfair trade practices. Now, what say[] you, Mr. Salsman [(Plaintiff's Counsel)]?

MR. SALSMAN: Your Honor, our position would be that that's a claim that belongs to Laurie Volpe. There's been no evidence that Cully's, the corporation, had any involvement in the alleged malicious prosecution, certainly no evidence that Cully's was ever harmed in any way by any alleged malicious prosecution of Laurie Volpe by Farm Bureau.

. . . .

THE COURT: So in this particular request for special instructions or special issues, can you—how does the malicious prosecution of Laurie Volpe enter into the benefit of or claim by corporation?

I can see how we would—I guess if we couch this in the terms of did Farm Bureau—as to the claim of Laurie Volpe for unfair trade practice, is the malicious prosecution of Laurie Volpe an unfair trade practice, but not as to the corporation.

MR. HEMMINGS [(Defendant's Counsel)]: Well, it happened during the claim process that the corporation was making.

. . . .

MR. SALSMAN: In order to submit—one of the elements, and I'm jumping a little ahead on this first issue still is that damages were proximate in cause. There was absolutely no evidence put on that Cully's suffered any damages proximately caused by the alleged malicious prosecution of Laurie Volpe.

She talked about how she personally suffered harm, but there's no evidence to show that Cully's suffered any harm as a result of the criminal prosecution of Laurie Volpe. So I just—I don't think there's any damages proximately caused to Cully's as a result of that alleged conduct.

**N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.**

[220 N.C. App. 212 (2012)]

THE COURT: Well, obviously we're just talking about now the special interrogatories as to the actions. The unreasonable refusal—without conducting a reasonable investigation could have nearly benefit Cully's thereby making number 3 appropriate. So if perhaps since we have a claim by corporation and a claim by Laurie Volpe for unfair deceptive trade practices, we will have to consider them separately. They're separately made in separately filed answers. I don't see why we wouldn't separate them out then if we have this issue of problems of—

MR. SALSMAN: Your Honor, we think that's important when we—if you were to find some unfair and deceptive trade practices and figure out what damages might be attributed to that. If it was because of the malicious prosecution, I think the damages are perhaps much more limited for that, so I think it's important to separate out.

THE COURT: I'm going to separate out the damages—I mean separate out the claims, so I'm going to do a claim for unfair deceptive for the corporation. I'm going to use number 1 without conducting a reasonable investigation.

And I don't have any other grounds—do you have any additional grounds that you would like for me to submit as a basis for question of fact on for the corporation other than without conducting a reasonable investigation understanding that the other three that you suggested I've already indicated I will not give?

MR. HEMMINGS: No.

THE COURT: Then I'm only going to give number 1.

Sticking with the corporation, second issue will be: Was it in commerce or did it affect commerce? Will the Plaintiff[] stipulate that insurance is commerce?

MR. SALSMAN: Yes, Your Honor, and we in fact admitted that in our answer.

THE COURT: I will not consider that.

Number 3, I will consider was any conduct the proximate cause of any injuries that may have been given for Cully's.

And then number 4, what amount, if any, has Cully's been injured.

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

Thus, the trial court determined that the element of whether a course of conduct was "in or affecting commerce" was stipulated by Plaintiff as to the Section 75-1.1 claim brought by Cully's. The trial court then addressed the Section 75-1.1 claim brought by Ms. Volpe:

> And then going back to the unfair and deceptive trade practices claim for Laurie Volpe, I'm going to give number 1 without conducting a reasonable investigation, and number 5, did they participate in unfair and deceptive acts.

> Second issue I'm going to not consider, having been stipulated.

The "second issue" with respect to Cully's was the determination of whether insurance was commerce. With respect to Ms. Volpe, the determination would have been whether Plaintiff's malicious prosecution was "in or affected commerce." However, the trial court clearly stated: "I'm not going to consider [that issue], having been stipulated." Immediately following the above-quoted material, the trial court moved on to the remaining issues. At no point did Plaintiff object to the trial court's statement that Plaintiff stipulated to the "second issue" as to Ms. Volpe; i.e. whether Plaintiff's actions giving rise to Ms. Volpe's Section 75-1.1 claim were in or affecting commerce. The trial court also a provided a final summary of the issues as follows:

> THE COURT: All right. Let me try to restate then the Defendant's contested issues then. All right.

> . . . .

> Number 2—I mean number 3. Excuse me. Before number 3, label this Unfair and Deceptive Trade Practices.

> Number 3. Did Farm Bureau refuse to pay the claim submitted by Cully's Motorcross Park, Inc. without conducting a reasonable investigation based upon all available information?

> Number 4. Was Farm Bureau's conduct—well, strike. Go back and eliminate Laurie Volpe from that question so it just reads—so it just reads Cully's Motorcross Park, Inc.

> Number 4 then would be, was Farm Bureau's conduct a proximate cause of Cully's Motorcross Park, Inc.'s injuries?

> Number 5 will read, what amount of damages, if any, were sustained by Cully's Motorcross Park, Inc.?

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

Next issue. Did Farm Bureau refuse to pay the claim submitted by Laurie Volpe without conducting a reasonable investigation based upon all available information?

Next issue. Did Farm Bureau participate in an unfair and deceptive act in the malicious prosecution of Laurie Volpe?

Number next. Was Farm Bureau's conduct a proximate cause of Laurie Volpe's injuries?

Number 6. What amount, if any, has Laurie Volpe been injured?

. . . .

Comments on those, Mr. Salsman?

MR. SALSMAN: No, sir.

THE COURT: Mr. Hemmings. Other than the objections that you made for failure to give punitive damages and failure to give your other contentions of unfair and deceptive trade practices which are preserved for appellate review.

MR. HEMMINGS: Just wanted to make sure four elements and you asked that we stipulate to the fourth one.

THE COURT: Yeah. I did not include the elements that we've already stipulated to and the facts that would have been established, four are in commerce. I think everybody stipulates the insurance already had. And the last one on malicious prosecution, the claim was clearly dismissed. That's not an issue of fact that I would submit to a jury. I would instruct them summarily on that.

. . . .

All right. Anything else from the Plaintiff in regards to the issues or the jury instructions or applicable law that I'm going to consider that we haven't talked about?

MR. SALSMAN: No, sir.

THE COURT: Thank you very much. Anything else for the Defendant other than to note your objections to the requested instructions or issues that I have indicated I will not give, anything other than those?

MR. HEMMINGS: No, sir.

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

Reviewing this colloquy, it is clear that, during the discussion establishing the issues to be decided by the trial court, Plaintiff was given the opportunity to address the Section 75-1.1 claim. When setting forth this issue, the trial court was clear that Ms. Volpe's Section 75-1.1 claim arose from the malicious prosecution. Regarding the second element of the claim, Plaintiff was asked: "Was it in commerce or did it affect commerce? Will the Plaintiff[] stipulate that insurance is commerce?" Plaintiff clearly stipulated to this second element, and the trial court concluded that it would not address the second element with respect to Cully's.

While we acknowledge that the specific language of the stipulation was "insurance is commerce[,]" it is clear from the colloquy quoted above that Plaintiff was aware the trial court was discussing the element of "affecting commerce" with respect to Ms. Volpe's Section 75-1.1 claim. Because Plaintiff failed to object to the trial court's statement that Plaintiff stipulated to the fact, Plaintiff allowed the trial court to determine all issues as discussed during the colloquy, and did not require the trial court to determine whether Ms. Volpe's Section 75-1.1 claim involved actions "in or affecting commerce."

This situation is analogous to those circumstances arising when a plaintiff fails to request specific jury instructions or fails to object to instructions provided. We therefore agree with Defendants that, on the facts arising from the transcript, Plaintiff stipulated to this element and is bound by that stipulation. *See Crowder v. Jenkins,* 11 N.C. App. 57, 62, 180 S.E.2d 482, 485 (1971) ("[A] stipulation admitting a material fact becomes a judicial admission in a case and eliminates the necessity of submitting an issue in regard thereto to the jury.").

Plaintiff further argues that, because the trial court found Ms. Volpe's counterclaims to be frivolous and malicious, she was not entitled to recover under Section 75-1.1. Plaintiff asserts that, because the trial court concluded that Plaintiff was not liable for breach of contract with respect to the fire policy on the Building, Ms. Volpe did not suffer any damage as a result of Plaintiff's unfair and deceptive act in seeking to gain leverage in the lawsuit. However, we note that the trial court found that Ms. Volpe had "sustained damages in the amount of $10,000.00 as a result of such unfair trade practices of Plaintiff." Plaintiff contends this finding of fact was unsupported by the evidence.

However, there is ample evidence in the transcript and the record concerning the legal fees and other costs that Ms. Volpe incurred from her arrest and malicious prosecution. Plaintiff's argument would require us to hold that, because the unfair and deceptive act was intended to "gain leverage in the civil action," the only damages the trial court should have considered would have been those that Ms. Volpe suffered as a result of Plaintiff's having gained such leverage. In other words, because Ms. Volpe did not prevail in her breach of contract counterclaim against Plaintiff, she suffered no damages for the purposes of the Section 75-1.1 claim. However, Plaintiff cites no authority in support of this argument. We hold that the trial court was correct in concluding that Plaintiff, by engaging in the unfair and deceptive act of malicious prosecution in order to gain leverage in the civil action, caused Ms. Volpe to suffer damages in the form of legal fees and other costs deriving from her prosecution.

## VII. The *Noerr-Pennington* Doctrine

**[5]** Plaintiff next argues that the trial court erroneously found the *Noerr-Pennington* doctrine inapplicable to the present case. The *Noerr-Pennington* doctrine immunizes conduct undertaken to influence or petition government bodies from antitrust liability:

> In *Noerr and Pennington*, the Supreme Court held that attempts to influence the legislative process, even if prompted by an anticompetitive intent, are immune from antitrust liability. This doctrine rests on two grounds: the First Amendment's protection of the right to petition the government, and the recognition that a representative democracy, such as ours, depends upon the ability of the people to make known their views and wishes to the government.

*Potters Medical Center v. City Hosp. Ass'n*, 800 F.2d 568, 578 (6th Cir., 1986). Citing *Forro Precision, Inc. v. Intern. Business Machines*, 673 F.2d 1045 (9th Cir. 1982), Plaintiff argues that providing information to the police triggers the *Noerr-Pennington* doctrine.

In *Forro*, the plaintiff company (Forro) had its business searched by police officers who were "accompanied by and aided in the search by employees" of the defendant company (IBM). *Forro*, 673 F.2d at 1049. "Forro brought suit against IBM on the basis of its participation in the search[.]" *Id.* The claims were eventually limited to whether "IBM had intentionally interfered with prospective business advantage under California law and had monopolized and attempted to monopolize in violation of section 2 of the Sherman Act." *Id.* IBM

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

asserted "a counterclaim under California law that Forro had misappropriated its trade secrets." *Id.* The jury returned a verdict in favor of Forro as to its "intentional interference claim and awarded actual damages in the amount of $2,739,010." *Id.* The jury also "found in favor of IBM on the misappropriation claim and awarded actual damages in the sum of $260,777, but deadlocked on the antitrust claims and on both parties' claims for punitive damages." *Id.*

The police involvement in *Forro* arose from IBM's cooperation with police agents in an effort to "discourage trade secret thievery." *Id.* at 1051. The cooperation resulted in a widely publicized search of Forro's place of business which caused Forro to "incur[] out-of-pocket expenses in the amount of $79,000 as a result of the search, and allegedly suffer[] further losses in sales and profits as a result of the adverse publicity." *Id.* The police operation resulted in ten indictments, none of which was "sought against Forro or any of its employees or principals." *Id.*

On appeal, the Ninth Circuit Court of Appeals reviewed, *inter alia*, the Sherman Act antitrust claims. The Ninth Circuit conducted the following discussion of whether IBM's involvement with the police warranted the application of the *Noerr-Pennington* doctrine:

> We do not liken an approach to the police for aid in apprehending wrongdoers to political activity. However, we think that the public policies served by ensuring the free flow of information to the police, although somewhat different from those served by *Noerr-Pennington*, are equally strong. Encouraging citizen communication with police does not generally promote the free exchange of ideas, nor does it provide citizens with the opportunity to influence policy decisions. Nonetheless, it would be difficult indeed for law enforcement authorities to discharge their duties if citizens were in any way discouraged from providing information. We therefore hold that the *Noerr-Pennington* doctrine applies to citizen communications with police.

*Id.* at 1060 (citation omitted). We note, however, that the underlying cause of action to which the Ninth Circuit held *Noerr-Pennington* applicable was Forro's claim of an attempted "violation of the Sherman Act's proscription of monopolization [which] must establish three things: (1) possession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal 'antitrust' injury." *Id.* at 1058 (citation omitted).

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

In the present case, the trial court's order making additional findings and conclusions of law in response to Plaintiff's *Noerr-Pennington* argument contains the following conclusion of law:

> Defendant's reliance upon <u>Forro Precision, Inc. v. International Business Machines Inc.</u>, 673 F. 2d 1045, 1982(9th circuit) and <u>Ottensmeyer vs. Chesapeake and Potomac Telephone Company of Maryland</u> 756 F. 2d 986 (1985) is misplaced and the [c]ourt distinguishes each case from the factual situation present herein. Those cases dealt with claims of intentional interference with prospective business advantage, and antitrust claims in <u>Forro</u>, and Sherman Act issues regarding telephone service in the state of Maryland, both issues of wide spread commercial interest and protection of the public at large from monopolization and unfair business practices to the community as a whole. The Court distinguishes those cases from the facts herein, which deal with a single fire insurance policy claim affecting only the Plaintiff and Defendants.

The *Noerr-Pennington* doctrine has been recognized in North Carolina in *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 275, 620 S.E.2d 873, 881 (2005) ("We hold that *Noerr* applies in the state courts of North Carolina."). This Court has also held it is applicable to cases involving claims under N.C. Gen. Stat. § 75-1.1. *See Reichhold Chems., Inc. v. Goel*, 146 N.C. App. 137, 156, 555 S.E.2d 281, 293 (2001) ("We therefore hold that the reasoning of *Noerr* and *PRE* apply to N.C.G.S. § 75-1.1.").

"This Court has noted that Chapter 75 of the North Carolina General Statutes was modeled after that federal antitrust law, and that federal decisions may 'provide guidance in determining the scope and meaning of chapter 75.' " *Reichhold*, 146 N.C. App. at 156, 555 S.E.2d at 293 (citation omitted). In *Reichhold*, this Court discussed whether a plaintiff, bringing an objectively reasonable lawsuit, was protected from liability by the holdings in either *Noerr* or another Supreme Court case, *Professional Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49, 123 L. Ed. 2d 611 (1993) (*PRE*). In *Reichhold*, this Court stated that "[u]nder *PRE*, a plaintiff may not be held liable under federal antitrust law for bringing an objectively reasonable lawsuit, regardless of the plaintiff's subjective intent in bringing the suit." *Reichhold*, 146 N.C. App. at 157, 555 S.E.2d at 293. After concluding that the lawsuit in question was objectively reasonable, this Court held that the plaintiff's action in bringing

N.C. FARM BUREAU MUT. INS. CO. v. CULLY'S MOTORCROSS PARK, INC.

[220 N.C. App. 212 (2012)]

the objectively reasonable lawsuit was not "an unfair trade practice under N.C.G.S. § 75-1.1." *Id.*

We first note that *Forro* involved Forro's lawsuit concerning the "Sherman Act's proscription of monopolization[.]" *Forro*, 673 F.2d at 1058. *Reichhold* concerned whether the plaintiff's objectively reasonable lawsuit was shielded from unfair and deceptive practices liability by *Noerr* and *PRE*. *Reichhold*, 146 N.C. App. at 157, 555 S.E.2d at 293. In the present case the action underlying the Section 75-1.1 claim was Plaintiff's instigation of a malicious prosecution without probable cause, which the trial court found to be done for the improper purpose of gaining leverage in a lawsuit. We find the present case distinguishable from both *Reichhold* and *Forro* and hold that *Noerr-Pennington* does not apply on these facts. We therefore find the trial court's reasoning sound and find *Noerr-Pennington* inapplicable to the facts of the present case. *See, e.g. Reichhold*, 146 N.C. App. at 148, 555 S.E.2d at 288 ("Because we see no relation between the tort of tortious interference and the legislative intent behind federal antitrust law, we decline to attempt to conform the reasoning of *Noerr* to the present case.").

## VIII. Damages

**[6]** Plaintiff argues that the trial court erred by concluding that Ms. Volpe suffered separate injuries resulting from the malicious prosecution and from the Section 75-1.1 claim because the conduct giving rise to those causes of action was the same. Plaintiff, citing *MRD Motorsports, Inc. v. Trail Motorsport, LLC*, 204 N.C. App. 572, 576, 694 S.E.2d 517, 520 (2010) (citation omitted), asserts that a claimant is " 'entitled to only one redress for a single wrong[.]' " However, in this case, the trial court found that "Plaintiff's actions in having [Ms.] Volpe arrested constitute a separate and distinctive injury to [Ms. Volpe] . . . in that it was done for such improper purpose [of gaining leverage in their civil action], and Plaintiff is liable . . . to [Ms.] Volpe for such unfair and deceptive trade practice." Plaintiff does not address the trial court's conclusion that there was a separate, additional element involved in the Section 75-1.1 claim. Because the trial court found an additional element, we are not persuaded by Plaintiff's argument.

## IX. Attorney's Fees

**[7]** Plaintiff's final argument is that the trial court erred in awarding attorney's fees in favor of Ms. Volpe because she should not have pre-

vailed in her Section 75-1.1 claim. In light of our holding with respect to Ms. Volpe's Section 75-1.1 claim, this argument is without merit.

Affirmed.

Judges CALABRIA and STROUD concur.