IN THE SUPREME COURT OF NORTH CAROLINA

No. 127A12

FILED 8 MARCH 2013

IMT, INC. d/b/a THE INTERNET BUSINESS CENTER

v.

CITY OF LUMBERTON


CITY OF LUMBERTON

v.

G&M COMPANY, LLC d/b/a INTERNET CAFÉ SWEEPSTAKES AND WINNER'S CHOICE


CITY OF LUMBERTON

v.

DANIEL PAUL STORIE d/b/a SWEEP-NET INTERNET BUSINESS CENTER


E.Z. ACCESS OF N.C., LLC

v.

CITY OF LUMBERTON


Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 724 S.E.2d 588 (2012), affirming two grants of summary judgment on 10 May 2011, and two grants of summary judgment on 6 June 2011, all in favor of the City of Lumberton and entered by Judge Robert Frank Floyd, Jr. in Superior Court, Robeson County. Heard in the Supreme Court on 13 November 2012.

*Kilpatrick Townsend & Stockton LLP, by Adam H. Charnes, Richard S.*

*Gottlieb, and Richard D. Dietz; and Grace, Tisdale & Clifton, P.A., by Michael A. Grace and Christopher R. Clifton, for plaintiff-appellants IMT, Inc. and E.Z. Access of N.C., LLC and defendant-appellant G&M Company, LLC; and Law Offices of Lonnie M. Player, Jr., PLLC, by Lonnie M. Player, Jr., for plaintiff-appellants IMT, Inc. and E.Z. Access of N.C., LLC and defendant-appellants G&M Company, LLC and Daniel Paul Storie.*

*James C. Bryan for appellee City of Lumberton.*

*Jeanette K. Doran and Tyler Younts for North Carolina Institute for Constitutional Law, amicus curiae.*

*Kimberly S. Hibbard, General Counsel, and Gregory F. Schwitzgebel, III, Senior Assistant General Counsel, for North Carolina League of Municipalities, amicus curiae.*

MARTIN, Justice.

The question before this Court is whether the City of Lumberton's privilege license tax violates the Just and Equitable Tax Clause of Article V, Section 2(1) of the North Carolina Constitution. While the decision to levy a privilege license tax is within the discretion of legislative entities, any tax so levied must be just and equitable. Because the Just and Equitable Tax Clause is a substantive constitutional protection against abuse of the taxing power, we hold that the City of Lumberton's tax increase of at least 59,900% exceeds constitutional bounds.

The parties in this case are the City of Lumberton (the City) and four companies that run promotional sweepstakes as part of their business plans. Under N.C.G.S. §§ 105-109(e) and 160A-211, the City is authorized to levy privilege license taxes on companies doing business within the city limits. In 2010, the City

amended its existing privilege license tax on "[a]ny for-profit business or enterprise, whether as a principal or an accessory use, where persons utilize electronic machines . . . to conduct games of chance, including . . . sweepstakes." The prior tax for these companies was a flat $12.50 per year. The new tax for these companies was $5,000 per business location plus $2,500 per computer terminal within each business location—making the minimum tax owed by each cyber-gambling establishment $7,500.[1] This change from a flat $12.50 to a $7,500 minimum imposes a 59,900% minimum increase per business location. In comparison, of the forty-four categories of privilege license taxes imposed by the City, the second highest was $500 for "Circuses, Menageries, Wild West, [and] Dog and Pony Shows" that visited town the same week as the county fair.

The new terms of the privilege tax dramatically increased the amount each company owed, ranging from $75,000 to $137,500.[2] The new tax represented an increase of approximately 600,000%–1,100,000% in the amount billed to the companies. Two of the four companies in this appeal filed complaints against the City, challenging the tax as unconstitutional. The City filed complaints against the other two companies for failure to pay the tax. In all four cases, the parties filed cross-motions for summary judgment. The trial court granted summary judgment

---

[1] This minimum amount owed assumes one business location and a single computer terminal.

[2] The amounts levied were based on the companies' multiple business locations ($5,000 each) and multiple computer terminals ($2,500 each).

for the City in each case.

The cases were consolidated at the Court of Appeals in *IMT, Inc. v. City of Lumberton*, ___ N.C. App. ___, 724 S.E.2d 588 (2012). Addressing the Just and Equitable Tax Clause, the majority reviewed the City's tax under this Court's sparse precedent to determine whether the tax "amount[ed] to a prohibition" of the companies' businesses. *Id.* at ___, 724 S.E.2d at 595 (citing *State v. Razook*, 179 N.C. 708, 710, 103 S.E. 67, 68 (1920)). The majority noted that "[t]he only evidence [the companies] presented [was] the new amount of the privilege license tax on [their] businesses in comparison to the privilege license tax on [their] businesses in previous years as well as in comparison to the privilege license tax on other businesses." *Id.* at ___, 724 S.E.2d at 596. The majority then noted that the companies "presented no additional evidence that the privilege license tax was prohibitive on their particular businesses." *Id.* at ___, 724 S.E.2d at 596. Because "such evidence does not prove the tax's invalidity," *id.* at ___, 724 S.E.2d at 596 (citing *Razook*, 179 N.C. at 711, 103 S.E. at 69), the majority affirmed the decisions of the trial court, *id.* at ___, 724 S.E.2d at 596. The dissent, however, reasoned, "[T]he discrepancy between the tax imposed by the Ordinance upon Cyber Gambling establishments and all other businesses, while not conclusive evidence of the inequity of the tax, makes summary judgment improper." *Id.* at ___, 724 S.E.2d at 597 (Hunter, Robert C., J., dissenting).

The companies challenged the constitutionality of the privilege license tax

levied on their cyber-gambling establishments. The question before this Court is whether the City's privilege license tax violates the Just and Equitable Tax Clause of Article V, Section 2(1) of the North Carolina Constitution. We review an appeal from summary judgment de novo. *E.g.*, *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

"The power of taxation shall be exercised in a just and equitable manner, for public purposes only, and shall never be surrendered, suspended, or contracted away." N.C. Const. art. V, § 2(1). This provision "is a limitation upon the legislative power." *Foster v. N.C. Med. Care Comm'n*, 283 N.C. 110, 126, 195 S.E.2d 517, 528 (1973). In the past, we have construed two of the three limitations enumerated therein. The Public Purpose Clause limits the State's ability to use tax revenue for private enterprises. *See Maready v. City of Winston-Salem*, 342 N.C. 708, 716, 467 S.E.2d 615, 620 (1996); *Foster*, 283 N.C. at 126-27, 195 S.E.2d at 528-29. Similarly, the Contracting Away Clause limits the State's ability to delegate its taxing power. *See Bailey v. State*, 348 N.C. 130, 147-48, 500 S.E.2d 54, 64 (1998). The Just and Equitable Tax Clause, however, has avoided a similarly thorough analysis.

While the Just and Equitable Tax Clause has been cited in several decisions, it has not been directly addressed as a substantive claim in its own right. The City argues that a challenge to the amount of a tax is not a justiciable claim under the Clause. We disagree. Our cases under both the Public Purpose Clause and the Contracting Away Clause show that these constitutional provisions impose distinct

and enforceable limitations on the manner in which government entities may exercise their taxing power. *See Foster*, 283 N.C. at 127, 195 S.E.2d at 528-29 ("We hold that the expenditure of public funds raised by taxation to finance . . . the construction of a hospital facility to be privately operated, managed and controlled is not an expenditure for a public purpose and is prohibited by Article V, § 2(1) of the Constitution of North Carolina."). Treating the Just and Equitable Tax Clause as mere precatory language, rather than as a substantive limitation like the Public Purpose and Contracting Away Clauses, would create internal inconsistency within this constitutional provision. The people of North Carolina placed the Just and Equitable Tax Clause in their Constitution, and we are not at liberty to selectively dismiss its relevance.

Several cases relied upon by the parties and by the Court of Appeals were decided before the adoption of the Just and Equitable Tax Clause in 1935. Those cases concerned common law challenges to taxes. In *State v. Danenberg*, we considered whether a license tax on businesses selling "near beer" (low-alcohol beer) was "unreasonable and prohibitory." 151 N.C. 718, 721, 66 S.E. 301, 303 (1909). We reasoned that because the General Assembly had authorized the sale of near beer in the state, " 'the municipalit[y] may not . . . prohibit [its] sale entirely. [It] may, however, under the usual general-welfare clause, enact reasonable regulations governing its sale.' " *Id.* (citation omitted). Undergirding our decision was the principle that cities "cannot, directly, by taxation, prohibit or destroy a business

legalized by the State." *Id.* (citations omitted). However, giving the license tax "a presumption of reasonableness," we concluded "there [were] no facts contained in the record sufficient to overcome this presumption." *Id.* at 724, 66 S.E. at 304. In *Razook*, we again addressed whether a license tax was "so unreasonable as to prohibit the business." 179 N.C. at 711, 103 S.E. at 68. And again, we stated that we " 'will not review the action of the lawmakers unless an abuse of such [tax-levying] discretion is obvious.' " *Id.* at 711, 103 S.E. at 69 (citation omitted). The Court of Appeals' analysis of the Just and Equitable Tax Clause in the instant case heavily relied on these cases. *See IMT*, ___ N.C. App. at ___, 724 S.E. 2d at 595-96 (majority).

We observe that the 1935 amendment to Article V did not incorporate the "unreasonable and prohibitory" standard from the common law. Instead, the language ratified by the people stated "[t]he power of taxation shall be exercised in a just and equitable manner." N.C. Const. of 1868, art. V, § 3 (1935) (now located in Article V, § 2); *see* Act of Apr. 29, 1935, ch. 248, sec. 1, 1935 N.C. Sess. Laws 270, 270. Since its adoption, no decision has rested solely on an interpretation of this language. The clause has been cited, but our cases have instead focused on other constitutional limitations in Section 2, such as the Section 2(5) requirement that taxes be applied uniformly. *See In re Martin*, 286 N.C. 66, 75-76, 209 S.E.2d 766, 773 (1974); *see also Smith v. State*, 349 N.C. 332, 340-41, 507 S.E.2d 28, 33 (1998) (applying "uniform rule" limitation in Section 2(2)).

We discussed the Just and Equitable Tax Clause in *Nesbitt v. Gill*, 227 N.C. 174, 41 S.E.2d 646, *aff'd per curiam*, 332 U.S. 749, 68 S. Ct. 61 (1947), in which we considered a challenge to a privilege tax levied on the purchase of horses or mules purchased for resale. Although the opinion primarily addressed whether the tax had been uniformly applied, the Court also discussed factors that could be considered when determining whether a tax was just and equitable, such as size of the city, sales volume, and exemptions from alternative taxes. *Id.* at 179-80, 41 S.E.2d at 650-51.

The instant appeal again requires us to determine how the Just and Equitable Tax Clause operates to limit the taxing power. The constitutional tension between the affirmative statement of the government's taxing authority and the limitation of the Just and Equitable Tax Clause must be resolved in a manner that protects the citizenry from unjust and inequitable taxes while preserving legislative authority to enact taxes without exposing the State or its subdivisions to frivolous litigation. We have articulated this need for balance before:

> The pervading principle to be observed by the General Assembly in the exercise of [the tax] powers is equality and fair play. It is the will of the people of North Carolina, as expressed in the organic law, that justice shall prevail in tax matters, with equal rights to all and special privileges to none. Of course, it is recognized that in devising a scheme of taxation, some play must be allowed for the joints of the machine . . . .

*Cnty. of Rockingham v. Bd. of Trs. of Elon Coll.*, 219 N.C. 342, 344-45, 13

S.E.2d 618, 620 (1941) (citation and internal quotation marks omitted).  The

limitations of Section 2 cannot lightly be brushed aside, for "[t]he legislative

power to tax is limited only by constitutional provisions."  *Lenoir Fin. Co. v.

Currie*, 254 N.C. 129, 132, 118 S.E.2d 543, 545, *appeal dismissed per curiam*,

368 U.S. 289, 82 S. Ct. 375 (1961).

Limitations on the State's taxing power are necessary to protect the public

from abusive tax policies.  Even under the substantial deference given to legislative

tax classifications at common law, our decisions acknowledged that the State could

not use its taxing power to prohibit otherwise legal endeavors.  *Danenberg*, 151 N.C.

at 721, 66 S.E. at 303.  Without question, this principle is even more warranted

when the State has been constitutionally charged with "the duty to tax in a just and

equitable manner."  *Lenoir Fin.,* 254 N.C. at 132, 118 S.E.2d at 545.  "Taxation

often involves the weighing of social policies and the determination of the respective

values to be assigned various conflicting but legitimate business enterprises; under

the doctrine of the separation of powers such functions have traditionally been

allocated largely to the determination of the legislative branch of government . . . ."

*E.B. Ficklen Tobacco Co. v. Maxwell*, 214 N.C. 367, 372, 199 S.E. 405, 409 (1938).

While these competing considerations might be difficult to reconcile in

nuanced cases, the case at bar is hardly nuanced.  Here, the City's 59,900%

minimum tax increase is wholly detached from the moorings of anything reasonably

resembling a just and equitable tax.  If the Just and Equitable Tax Clause has any

substantive force, as we hold it does, it surely renders the present tax invalid. In light of the unusual facts we confront in the present case, and cognizant of the nearly universal deference by courts to legislative tax classifications, we do not attempt to define the full parameters of the Just and Equitable Tax Clause's limitations on the legislative taxing power. Rather, we conclude the companies here have shown that the present tax—representing a 59,900% minimum tax increase upon conduct viewed as putatively lawful at the time of the assessment— transgressed the boundaries of permissible taxation and constituted an abuse of the City's tax-levying discretion. We therefore hold the City of Lumberton's privilege tax at issue constitutes an unconstitutional tax as a matter of law and the trial court erred in granting summary judgment for the City. Accordingly, we reverse the decision of the Court of Appeals.

In cases arising under the Just and Equitable Tax Clause, trial courts should look to *Nesbitt* for guiding factors in assessing such claims. But those factors should not be viewed as exhaustive. For example, in the instant case, the stark difference between the amount of tax levied on cyber-gambling establishments and the amounts levied against other economic activities under the Ordinance militates in favor of our conclusion that the tax is unjust and inequitable. We do not suggest, however, that any large increase in a tax, or simply a high tax, would alone be enough to run afoul of the Just and Equitable Tax Clause. Rather, challenges under the Just and Equitable Tax Clause must be determined on a case-by-case

basis.

In the instant case, we have chosen to resolve the substantive claim rather than remand the issue because—even though trial courts have "institutional advantages over appellate courts in the application of facts to fact-dependent legal standards," *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 38, 591 S.E.2d 870, 894 (2004) (citation and internal quotation marks omitted)—the parties here have forecasted uncontested material facts under Rule 56. In situations like the present case, in which the material facts necessary to determine the legal question are uncontested, there is no need for further factfinding.[3] Here we address merely a question of law, which this Court can resolve as capably as a trial court. *See N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 664-65, 599 S.E.2d 888, 897-98 (2004). We do not assume this task lightly, but we do so here for the sake of clarity and judicial economy.

We are cognizant that our holding in *Hest Technologies, Inc. v. State ex rel. Perdue*, ___ N.C. ___, ___ S.E.2d ___, 2012 WL 6218202 (Dec. 14, 2012) (No. 169A11-2), alters the contextual landscape for this case. But there are still issues that need to be resolved, such as the disposition of the taxes that were paid and the administrative levies that were imposed between the implementation of this tax

---

[3] While most often it is inappropriate to grant summary judgment to the party with the burden of proof on the underlying issue, the undisputed facts in the record here present an appropriate opportunity to do so. *See Kidd v. Early*, 289 N.C. 343, 370, 222 S.E.2d 392, 410 (1976).

and our decision in *Hest Technologies*. Having resolved a legal issue common to these cases by holding this privilege license tax unconstitutional under the Just and Equitable Tax Clause, we reverse the decision of the Court of Appeals on that issue and remand to that court for further remand to the trial court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Justice BEASLEY took no part in the consideration or decision of this case.