IN THE SUPREME COURT OF NORTH CAROLINA

No. 243PA12

FILED 13 JUNE 2013

THE NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY

v.

CULLY'S MOTORCROSS PARK, INC., and LAURIE VOLPE

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 725 S.E.2d 638 (2012), affirming a judgment and two orders, all entered on 7 February 2011 by Judge Wayland J. Sermons, Jr. in Superior Court, Wilson County. Heard in the Supreme Court on 16 April 2013.

*Harris, Creech, Ward and Blackerby, P.A., by Jay C. Salsman, C. David Creech, and Luke A. Dalton, for plaintiff-appellant.*

*Hemmings & Stevens, PLLC, by Aaron C. Hemmings, for defendant-appellees.*

*Schulz Stephenson Law, by Bradley N. Schulz; and Wait Law, P.L.L.C., by John L. Wait, for North Carolina Advocates for Justice, amicus curiae.*

*Young Moore and Henderson P.A., by Glenn C. Raynor, for North Carolina Association of Defense Attorneys, amicus curiae.*

*Baucom, Claytor, Benton, Morgan & Wood, P.A., by James F. Wood, III, for North Carolina Insurance Crime Information Exchange, amicus curiae.*

*Bailey & Thomas, P.A., by Roger W. Marion, Jr. and David W. Bailey, Jr., for Property Casualty Insurers Association of America, amicus curiae.*

EDMUNDS, Justice.

In the aftermath of a house fire on property belonging to defendant Cully's Motorcross Park, Inc. (Cully's), an investigator for plaintiff North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau) found strong evidence of arson and reported his suspicions to a Wilson Police Department sergeant. These findings included allegations that defendant Laurie Volpe (Volpe), Cully's president and sole stockholder, had failed to report to Farm Bureau that there was a deed of trust on the property when she insured it, when she filed a claim of loss after the fire, or when she later sold the burned property to a purchaser who did not know it was still encumbered. Volpe thereafter was arrested and charged with obtaining property by false pretenses based upon her sale of the encumbered property. This appeal involves Volpe's claim that the insurance investigator's report to a law enforcement officer constituted the initiation of a malicious prosecution. Because we conclude that the investigator did not initiate a criminal prosecution, we reverse the holding of the Court of Appeals that affirmed the trial court's finding to the contrary.

In the late evening of 5 September or early morning of 6 September 2008, a fire was set in the house at 314 Hill Street in Wilson, North Carolina. Responding Wilson Fire Department firefighters found a candle on the floor of the downstairs dining room and observed a distinctive pour pattern on some walls of the house. They followed the burn trail and pour pattern to a small room at the top of the stairs on the second floor of the house. Inside the room was a tipped red gas can

labeled "Race Fuel." A pour pattern on the walls of the house led directly to the gas can.

The damaged property was owned by defendant Cully's. Defendant Volpe was the president and only shareholder of Cully's, and Volpe's husband, Louis R. Volpe, Jr. (Mr. Volpe), was the corporate secretary. Cully's originally was incorporated in Florida, where the Volpes operated a dirt bike racing track, using red gas cans labeled "Race Fuel" in the business. When the Volpes moved to North Carolina, they reincorporated, keeping the name Cully's Motorcross Park, but operating as a business renovating and reselling homes. They brought their red gas cans from Florida, and Mr. Volpe kept them to fuel equipment that he used for landscaping and lawn maintenance at the properties that Cully's owned and renovated.

Volpe, through Cully's, purchased the property at 314 Hill Street from James and Diane Skinner on 19 December 2007, paying in cash $25,000 of the $31,500 purchase price. The remaining $6,500 was to be paid via a balloon payment recorded in a deed of trust that required full payment to the Skinners no later than one year from the date of purchase or upon the sale of the home, whichever came first. Before signing the deed of trust, Volpe submitted an application to Farm Bureau to have the property added to her fire insurance policy. The application, which named the insured as "Laurie Volpe – Cullys [sic] Motorcross Park LLC" and was signed "Laurie A. Volpe," did not reveal the existence of a deed of trust on the

property, and the box on the form that asked, "Does any other person or entity have an ownership interest in the property?" was checked "No." The property was added and the policy was issued by Farm Bureau with a policy limit of $60,000.

After the fire, on 17 September 2008, Volpe filed a Sworn Statement in Proof of Loss form with Farm Bureau on behalf of Cully's. In response, Farm Bureau initiated an investigation. In the days following the fire, the Farm Bureau Special Investigator Randall Loftin (Investigator Loftin) and other Farm Bureau investigators toured the fire scene. Investigator Loftin testified that he observed medium to heavy fire damage, extensive smoke damage, a pour pattern, and the candle that was still on the floor in the downstairs dining room. The circumstances of the fire led Farm Bureau to suspect arson, and Investigator Loftin quickly focused on Mr. Volpe.

Investigator Loftin interviewed both Volpes several times in the months following the fire, collecting financial information from them pertaining both to themselves and to Cully's, along with such materials as notes or deeds of trust and prior insurance claims. Volpe submitted to an examination under oath in January 2009, maintaining that she was cooperating fully with Farm Bureau and providing all the documents she understood had been requested and that she had in her possession. Mr. Volpe, on the other hand, refused to submit to an examination under oath, and Investigator Loftin was unable to obtain a sworn statement from him prior to Mr. Volpe's death in September 2010. Although Mr. Volpe was named

in the litigation described below, he was dismissed as a party after he died.

As Investigator Loftin continued his investigation, on 6 November 2008, Cully's sold the property by means of a quitclaim deed signed by Volpe to José Giron, who knew of the fire damage. When deposed before trial, Volpe claimed she had made Mr. Giron aware of the balloon payment that she still owed on the original purchase, adding that she had told Mr. Giron she would pay off that balloon payment. However, James Skinner testified at trial that he had to work out a repayment plan with Mr. Giron because the Volpes never paid the $6,500.

Another point of contention at trial was whether Volpe had disclosed the deed of trust on 314 Hill Street during Farm Bureau's investigation. As noted above, Volpe failed to indicate on the insurance application form she signed and filed with Farm Bureau that the property was the subject of a mortgage, even though the form contained an explicit inquiry seeking such information. Volpe testified, and the trial court found as fact, that she had responded as she did because she did not consider a purchase money deed of trust that was due in one year and did not require monthly payments to be a mortgage. Although the trial court further found that Volpe disclosed in the proof of loss form she filed after the fire that Cully's owed $6,500 on the property, we note that where the form asks for "all owners (and names of spouses) of the insured property, and all persons or companies which have any lien or encumbrances against the insured property, such as mortgagees, deeds of trust, judgments, etc.," Volpe wrote in only "Cully's Motorcross Park, Inc." while

nowhere listing either the amount of $6,500 or the names of creditors James and Diane Skinner.

While Investigator Loftin worked, the Wilson Police Department opened a parallel investigation into the fire, which police and firefighters had classified as "suspicious." Police Sergeant J.C. Lucas (Sergeant Lucas) was the assigned investigator. He interviewed the Volpes and neighbors around 314 Hill Street. On 24 September 2008, he met Investigator Loftin and the Volpes at the house. Shortly after that meeting, however, Sergeant Lucas fell ill and did not return from sick leave until April 2009. As a result, the investigation was conducted primarily by Investigator Loftin on behalf of Farm Bureau.

After completing his investigation, Investigator Loftin submitted his report and recommendations to his superiors. Farm Bureau ultimately denied the claim on 23 February 2009, citing among other factors Mr. Volpe's failure to provide a sworn statement, Volpe's failure to disclose the deed of trust in favor of the Skinners, and Farm Bureau's suspicion that the fire had been intentionally set by one of the Volpes. The next day, Farm Bureau filed a complaint for declaratory judgment, seeking a judicial declaration that it had no obligation under the insurance policy to named defendants Cully's, Volpe, and Mr. Volpe. The complaint alleged that Farm Bureau acted reasonably and in good faith in investigating the fire and set out several reasons Farm Bureau was legally entitled to a declaratory judgment in its favor. These allegations included that Mr. Volpe, an officer and

employee of Cully's, failed to submit to an examination under oath as required by the policy; that defendants failed to cooperate in the investigation by providing requested documents and records; and that defendants made material misrepresentations and attempted to conceal material facts, both by failing to provide the deed of trust on the property and by failing to produce the quitclaim deed that transferred the property after the fire. In addition, Farm Bureau alleged that evidence indicated that the Volpes had the opportunity and motive to set the fire, an act that, if established in court, also would relieve Farm Bureau of its duty to provide coverage.

On 23 March 2009, defendants filed a combined answer and counterclaim, denying Farm Bureau's right to decline coverage and asserting that Farm Bureau had breached the insurance contract, violated the Unfair Claims Settlement Practices provision of the North Carolina Insurance Law, committed unfair and deceptive acts or practices in or affecting commerce in violation of N.C.G.S. § 75-1.1, and acted in bad faith. Defendants sought treble damages, punitive damages, and attorney's fees.

On 16 April 2009, Investigator Loftin again met with Sergeant Lucas at Investigator Loftin's request. Investigator Loftin informed Sergeant Lucas, who by then had returned to duty from sick leave, of the results of his investigation, told Sergeant Lucas that the Volpes' insurance claim had been denied, and added that the property had been sold to Mr. Giron even though Volpe had not paid off the

balloon payment owed and secured by a deed of trust on the property. Using the documentation provided by Investigator Loftin, Sergeant Lucas opened a separate investigation of fraud against Volpe. After meeting with Mr. Giron and Mr. Skinner, Sergeant Lucas concluded that Volpe had committed a crime by selling to Mr. Giron property that Volpe did not own.

Sergeant Lucas consulted with a real estate attorney and an assistant district attorney to discuss his findings, then presented the case to a Wilson County magistrate on 4 May 2009. The magistrate found probable cause and issued a warrant to arrest Volpe for the offense of obtaining property by false pretenses. The next day, Sergeant Lucas asked Volpe to come to the police station and give a statement. After interviewing her and asking her to write out a statement regarding the sale of 314 Hill Street to Mr. Giron, Sergeant Lucas had Volpe arrested pursuant to the warrant. However, on 19 May 2009, the district attorney dismissed the charge against Volpe. On 22 June 2009, Volpe and Cully's filed an amended answer and counterclaim, adding a claim that Farm Bureau had instituted a malicious prosecution against Volpe.

A bench trial on all claims and counterclaims was held in December 2010. After considering the evidence, arguments of counsel, and additional posttrial motions by the parties, the trial court found that Farm Bureau had neither breached the insurance contract nor engaged in unfair and deceptive practices by "refusing to pay the fire claim without conducting a reasonable investigation based

upon all available information." The trial court also found that "[Mr.] Volpe, Jr. acting on behalf of Cully's Motorcross Inc., caused, conspired to cause, or allowed to be caused the fire at 314 Hill Street." However, the trial court found that Volpe was not involved in the fire, that Volpe's actions as described to Sergeant Lucas by Investigator Loftin did "not amount to a crime," that Farm Bureau caused a criminal proceeding to be instituted against Volpe, and that Farm Bureau was liable to Volpe for malicious prosecution.

The trial court further found as fact that Volpe had made a statement pertaining to the debt on 314 Hill Street to a representative of Farm Bureau as early as 8 September 2008, that Farm Bureau knew of Volpe's debt to Mr. Skinner on the property as of that date, and that Farm Bureau did not provide this information to Sergeant Lucas until after Volpe filed her counterclaim. The trial court concluded as a matter of law that Farm Bureau withheld this information from the Wilson Police until after Volpe filed her counterclaim for the purpose of achieving leverage in the instant action, thereby committing an unfair and deceptive practice. The trial court awarded Volpe attorney's fees, damages in the amount of $26,075 for malicious prosecution, and damages in the amount of $10,000 (trebled to $30,000) for "the unfair and deceptive trade practice of malicious prosecution."

The Court of Appeals affirmed the trial court's decision. *N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.*, ___ N.C. App. ___, ___, 725 S.E.2d

638, 651 (2012). In reviewing Farm Bureau's argument that it did not initiate the criminal action against Volpe, but instead merely provided information to the police, the Court of Appeals focused on its finding that almost all the information used by Sergeant Lucas in making his decision to prosecute Volpe had been supplied by Farm Bureau's Investigator Loftin. *Id.* at ___, 725 S.E.2d at 643-44. Because it agreed with the trial court that a criminal prosecution would have been unlikely if Investigator Loftin had not contacted Sergeant Lucas, the Court of Appeals concluded that the trial court did not err by determining that Farm Bureau initiated criminal proceedings. *Id.* at ___, 725 S.E.2d at 644. The Court of Appeals then considered Farm Bureau's other issues and affirmed the trial court. *Id.* at ___, 725 S.E.2d at 651. We allowed Farm Bureau's petition for discretionary review.

We begin by observing that all of Volpe's surviving claims are based upon a contention that Farm Bureau maliciously instigated a criminal prosecution against her and that the malicious prosecution was an unfair and deceptive practice, which the trial court found was instituted for the purpose of gaining leverage in the current action. Thus, if Investigator Loftin's report to Sergeant Lucas was proper, Farm Bureau neither instituted a malicious prosecution nor committed an unfair and deceptive practice, and Volpe's claims fail. Accordingly, we consider the propriety of Investigator Loftin's actions.

No party has challenged the trial court's findings of fact. When a trial court sits without a jury, findings of fact are conclusive on appeal "if supported by any

substantial evidence," *Carolina Milk Producers Ass'n Coop., Inc. v. Melville Dairy, Inc.*, 255 N.C. 1, 22, 120 S.E.2d 548, 563 (1961), while conclusions of law are reviewed de novo, *Davison v. Duke Univ.*, 282 N.C. 676, 712, 194 S.E.2d 761, 783 (1973). Here, while the trial court found as fact that Investigator Loftin initiated the prosecution of Volpe, we determine that this matter is instead a mixed question of fact and law. *State v. Sparks*, 362 N.C. 181, 185-86, 657 S.E.2d 655, 658 (2008) (conducting de novo review of a conclusion of law that the trial court mislabeled as a finding of fact); *see also In re Foreclosure of Gilbert*, 211 N.C. App. 483, 487-88, 711 S.E.2d 165, 169 (2011) (citations omitted) (observing that when the trial court has mislabeled findings of fact and conclusions of law, the reviewing court may reclassify them as necessary before applying the appropriate standard of review). The actions of Investigator Loftin and Sergeant Lucas are facts, but the trial court's determination that these actions constituted initiation of a criminal action is a conclusion of law we review de novo.

To prove that Farm Bureau is guilty of malicious prosecution, Volpe must establish that: "(1) [Farm Bureau] initiated the earlier proceeding; (2) malice on the part of [Farm Bureau] in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of [Volpe]." *Best v. Duke Univ.*, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994) (citing *Jones v. Gwynne,* 312 N.C. 393, 397, 323 S.E.2d 9, 11 (1984)). The dispositive issue in this

case is whether the trial court erred when it found as a matter of law that Farm Bureau, through its agent Investigator Loftin, initiated the prosecution of Volpe.

The Court of Appeals cited one of its own cases for the proposition that " '[e]xcept for the efforts of [Farm Bureau], it is unlikely there would have been a criminal prosecution of [Volpe].' " *Cully's Motorcross*, ___ N.C. App. at ___, 725 S.E.2d at 644 (quoting *Williams v. Kuppenheimer Mfg. Co.*, 105 N.C. App. 198, 201, 412 S.E.2d 897, 900 (1992)). The court below noted that Investigator Loftin had provided to Sergeant Lucas almost all the information Sergeant Lucas knew about the case, that Sergeant Lucas had learned about the sale of the property at 314 Hill Street and the quitclaim deed to Mr. Giron only as a result of the information Investigator Loftin had gathered, and that Sergeant Lucas had relied almost exclusively on the information provided by Investigator Loftin when Sergeant Lucas decided to interview Mr. Giron and Volpe. *Id.* at ___, 725 S.E.2d at 644. Based on this chain of events, the Court of Appeals concluded that, but for Investigator Loftin's provision of information to Sergeant Lucas, Volpe probably would not have been charged. *Id.* at ___, 725 S.E.2d at 644. Accordingly, the Court of Appeals affirmed the trial court's finding that Volpe's prosecution effectively had been initiated by Farm Bureau through its agent, Investigator Loftin. *Id.* at ___, 725 S.E.2d at 644.

We believe that the Court of Appeals' interpretation of the element of initiation in a malicious prosecution case does not account adequately for the roles

played by police and prosecutorial discretion. Instead, a more comprehensive analysis is that advocated by Farm Bureau and found in the Restatement (Second) of Torts. Section 653 of the Restatement sets out the requirements for a cause of action for malicious prosecution, and most relevant to this case, states in Comment (g):

> *Influencing a public prosecutor.* A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

Restatement (Second) of Torts § 653 (cmt. g) (1977).

This formulation balances and protects important public interests. It allows citizens to make reports in good faith to police and prosecutors without fear of retaliation if the information proves to be incomplete or inaccurate. If the information is false, this formulation only protects a reporting party who believes it

to be true, thus preserving the element of malice both to deter those who would subvert to their own ends the power held by police and prosecutors and to protect citizens from "one [who] resorts to the process of the law without probable cause, willfully and maliciously, for the purpose of injuring his neighbor." *Chatham Estates v. Am. Nat'l Bank*, 171 N.C. 648, 651, 171 N.C. 579, 582, 88 S.E. 783, 785 (1916). This sensible approach encourages independent investigation by those in law enforcement who receive the information. Unlike the "but for" test employed by the trial court and the Court of Appeals, the Restatement recognizes that police and prosecutors have discretionary authority that can insulate from liability those who provide erroneous or mistaken information. Accordingly, we recognize and apply here the principles set out in Comment (g). *See Stanback v. Stanback*, 297 N.C. 181, 204, 254 S.E.2d 611, 626 (1979) (citing the Restatement of Torts for the proposition that to establish that the former proceeding terminated favorably, a plaintiff in a malicious prosecution action need assert only that the prior case was dismissed), *disapproved of for other reasons by Dickens v. Puryear*, 302 N.C. 437, 447-48, 276 S.E.2d 325, 331-33 (1981).

When this Court implements a new analysis to be used in future cases, we may remand the case to the lower courts to apply that analysis. *See, e.g., Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 39, 591 S.E.2d 870, 895 (2004) (noting that because "the trial court did not have the benefit of the precise formulation of the doctrine we articulate in this opinion," the case should be remanded "for further

proceedings consistent with this opinion"). Remand is particularly appropriate when additional findings of fact are necessary. *Id.* (remanding the case to the trial court because the "inquiry required here is a fact-intensive one"). However, when the new analysis relies upon conclusions of law rather than findings of fact, and when the findings of fact made by the trial court are unchallenged, this Court may elect to conduct the analysis rather than to remand the case.

In its judgment, the trial court's finding of fact 61 states that Investigator Loftin withheld from Sergeant Lucas information about the debt on the property until after Volpe's amended counterclaim had been filed, thereby causing the criminal action to be instituted. However, in light of our recognition of the test enunciated above, whether the recited facts constitute initiation of a criminal action is a conclusion of law that we review de novo. In addition, the "but for" test used in finding of fact 62, which states that Sergeant Lucas would "never" have pursued a criminal prosecution if Investigator Loftin had not reported his findings, is no longer appropriate.

Accordingly, we must determine whether, once Sergeant Lucas received information from Investigator Loftin about Volpe, Sergeant Lucas exercised his own discretion in deciding to seek criminal charges against Volpe. Our review of uncontested evidence presented at trial indicates that Investigator Loftin testified that the offense he believed Volpe had committed was insurance fraud, that he never asked Sergeant Lucas to arrest Volpe or initiate a prosecution against her,

and that he never made any suggestions as to what Sergeant Lucas should do with Investigator Loftin's information. Sergeant Lucas testified that the decision to pursue a charge of false pretenses was "my decision, my decision only." He also stated that, "no one tells me, even my chief on down when I should -- when I should make a charge or not." In addition, Sergeant Lucas testified that he interviewed Mr. Skinner and Mr. Giron during his investigation and that he consulted with an assistant district attorney and a real estate attorney after receiving information from Investigator Loftin and before taking the matter to a magistrate in pursuit of a warrant. All this testimony leaves no doubt that while Sergeant Lucas considered and used the information provided by Investigator Loftin, he independently exercised his discretion to make the prosecution his own. Consequently, Farm Bureau did not institute a malicious prosecution and its actions did not constitute an unfair and deceptive practice.

Because the remaining issues on appeal stem from the trial court's determination that Farm Bureau initiated a malicious prosecution, those issues are now moot. Those issues are dismissed, and the Court of Appeals' decision as to those matters is vacated. This case is remanded to the Court of Appeals for further remand to the trial court with instructions to vacate the two orders entered on 7 February 2011 and amend the judgment entered the same day in a manner consistent with this opinion.

REVERSED IN PART, VACATED IN PART, AND REMANDED.

Justice BEASLEY, concurring in part and dissenting in part.

I concur with the majority that Comment (g) in the Restatement (Second) of Torts § 653 (1977) is the proper standard to define whether a party "initiated" the earlier proceeding in a malicious prosecution claim. I would, however, remand the case to the trial court to make findings of fact and conclusions of law applying the standard announced today, as is appropriate for a trial court rather than an appellate court, and therefore I dissent in part. *See Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 38, 591 S.E.2d 870, 894 (2004) ("This disposition [of remand] reflects trial courts' 'institutional advantages' over appellate courts in the 'application of facts to fact-dependent legal standards.' " (quoting *Augur v. Augur*, 356 N.C. 582, 586, 573 S.E.2d 125, 129 (2002)).

North Carolina law requires a plaintiff to prove four elements to prevail on a malicious prosecution claim: "(1) defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." *Best v. Duke Univ.*, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994) (citation omitted). This case provides clarity regarding the first element. *Id.*

> A private person who gives to a public official information
> of another's supposed criminal misconduct, of which the
> official is ignorant, obviously causes the institution of

N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.

*BEASLEY, J., dissenting*

> such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

Restatement (Second) of Torts § 653 cmt. g (1977).

Whether plaintiff initiated the earlier proceeding is a conclusion of law, but this conclusion of law, like any other conclusion of law, is dependent upon factual support. *See, e.g.*, *Scarborough v. Dillard's, Inc.*, 363 N.C. 715, 722, 693 S.E.2d 640, 644 (2009), *cert. denied*, __ U.S. __, 131 S. Ct. 2456 (2011). When a party has failed to challenge the findings of fact, the findings are binding on the appellate court. *Id.* (citations omitted). The trial court's conclusions of law are reviewed de novo. *Id.* (citations omitted).

Here, plaintiff did not challenge the trial court's findings of fact *as findings of fact*; rather, plaintiff challenged what the trial court labeled "findings of fact," but argued such "findings" were actually conclusions of law. In essence, plaintiff challenged the trial court's conclusions of law and allowed the court's findings of

N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.

*BEASLEY, J., dissenting*

fact to go unchallenged. Thus, the trial court's correctly labeled findings of fact are binding on this Court, though conclusions of law are reviewed de novo.

The majority's opinion, written under the guise of de novo review, necessarily requires findings of fact that the trial court did not make—findings whether Sergeant Lucas exercised "uncontrolled discretion" in charging defendant Volpe with obtaining property by false pretenses. Restatement (Second) of Torts § 653 cmt. g. Sergeant Lucas's exercise of discretion is evidenced by actions that, by the majority's own definition, are appropriately considered findings of fact. I cannot fault the trial court for not making findings of fact regarding whether Sergeant Lucas exercised independent discretion because we had not yet established that Comment (g) is the appropriate standard by which to determine whether plaintiff "initiated the earlier proceeding." The need for further fact-finding distinguishes the instant case from *IMT, Inc. v. City of Lumberton*, __ N.C. __, 738 S.E.2d 156 (2013), "in which the material facts necessary to determine the legal question [were] uncontested." *Id.* at __, 738 S.E.2d at 160. The trial court, if provided the opportunity to make the appropriate findings of fact, might agree that there is "no doubt" that Sergeant Lucas exercised independent discretion in charging defendant Volpe based on the evidence presented, but we are not a fact-finding court. We lack material findings of fact necessary to answer the legal question in this case, and this Court should not engage in the fact-finding process. *Godfrey v. Zoning Bd. of Adjust. of Union Cnty.*, 317 N.C. 51, 63, 344 S.E.2d 272, 279 (1986) ("Fact[-]finding

N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.

*BEASLEY, J., dissenting*

is not a function of our appellate courts."). Therefore, remand is the only appropriate disposition.

For the reasons stated above, I respectfully concur with the majority's recognition of the Restatement to define when a party "initiated the earlier proceeding" and dissent from the majority's mandate to reverse rather than to remand for appropriate findings of fact and conclusions of law under the standard recognized today.

Justice HUDSON joins in this opinion concurring in part and dissenting in part.