IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-266

Filed 19 March 2024

Union County, No. 17CVD2215

LORI NICOLE STERNOLA, Plaintiff

v.

MARK DONOVAN ALJIAN, Defendant.

Appeal by defendant from judgment entered 4 August 2022 by Judge William F. Helms III in Union County District Court. Heard in the Court of Appeals 21 February 2024.

*Emblem Legal, PLLC, by Stephen M. Corby, for the plaintiff-appellee.*

*Connell & Gelb PLLC, by Michelle D. Connell, and The Honnold Law Firm, P.A., by Bradley B. Honnold, for the defendant-appellant.*

TYSON, Judge.

Mark Donovan Aljian ("Defendant") appeals from an order on permanent child support and adjudication of arrears. We reverse and remand.

## I. Background

Defendant and Lori Nicole Sternola ("Plaintiff") met in Los Angeles in 1998, moved to London, England in 2001, and were married on 1 June 2002. They separated in February 2011 and later divorced. Plaintiff is a citizen of the United States. Defendant is a dual citizen of the United States by birth and a naturalized

citizen of the United Kingdom.

Plaintiff and Defendant are parents of three children: KMA, born September 2001; M-MA, born March 2003; and, RTA, born May 2006. All three children were born while the parties resided in the United Kingdom and hold dual United States and United Kingdom citizenships.

Since separation in 2011, Plaintiff and Defendant have shared custody of their then minor children with Plaintiff having nine overnights and Defendant having five overnights every two weeks. The Central Family Court in London ("London Court") entered an order 13 December 2011 addressing property division, alimony, and child support.

The London Court entered an order allowing their teenager, KMA, to move with Plaintiff to the United States on 29 April 2015. Defendant retained custody of the other two children in London. Plaintiff and KMA moved to Waxhaw, in July 2015. Defendant, M-MA, and RTA remained in London.

The London Court entered an order addressing the cost apportionment of orthodontic treatment for the children and for reimbursement of air travel for the children. The London Court also entered an order on 9 August 2017 which allowed Defendant to move with M-MA and RTA to Los Angeles, California.

Plaintiff took custody of M-MA and RTA in August 2017 and kept them in Waxhaw in violation of the custody order. The London Court entered an order requiring her to return to the United Kingdom on 14 September 2017. Plaintiff

appealed this order in the United Kingdom. Plaintiff also filed a complaint in Union County for temporary and permanent child custody and motions for emergency child custody, assumption of jurisdiction, and for attorneys' fees. Defendant filed a petition to register and enforce a foreign custody order on 4 October 2017. The district court entered a temporary child custody order on 14 November 2017, which ordered a status report of proceedings in the London Court.

The London Court entered an order on 22 December 2017 after both parties had moved to the United States. Plaintiff was living in North Carolina, and Defendant was living in California. The order also set out Plaintiff's and Defendant's visitation schedule with their children. Mother amended her complaint adding claims for prospective and retroactive child support on 18 May 2018.

Defendant was involuntarily terminated from his employment with the Hong Kong and Shanghai Banking Corporation on 25 July 2019 due to his position being eliminated. Defendant received a one-year severance equal to his salary following termination. Defendant moved to Charlotte to be nearer to the children in October 2019.

The district court held a hearing on child support on 12 October 2020. The oldest child had reached eighteen years old at the time of the hearing, and the other children were seventeen and fourteen years old. Almost two years later, the district court entered an order on permanent child support and adjudication of arrears on 4 August 2022 finding, *inter alia*, Defendant's child support obligation was $2,000 per

month, and he owed $32,296 in unpaid support arrears to Plaintiff. Defendant appeals.

## II.   Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2023).

## III.   Issues

Defendant argues the district court erred by: (1) using speculative, unsubstantiated, and incompetent evidence to impute and determine his income; (2) imputing income in the absence of evidence of bad faith suppression of income to avoid paying child support; (3) ordering him to pay arrearage of $32,296; and, (4) denying his due process rights by delaying entry of the order for over 21 months after hearing.

## IV.   Findings of Fact

Defendant argues the district court erred by using speculative, unsubstituted, and incompetent evidence to impute and determine his income.

## A. Standard of Review

Generally, the trial court's decision regarding child support is:

> left to the sound discretion of the trial judge and will not be disturbed on appeal unless there has been a manifest abuse of that discretion. When the trial court sits without a jury, the standard of review on appeal is whether [substantial] , , , evidence support[s] the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.

*Williamson v. Williamson*, 217 N.C. App. 388, 390, 719 S.E.2d 625, 626 (2011)

(citations and quotation marks omitted).

A trial court abuses its discretion when it renders a decision that is "manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998) (citations omitted). We review conclusions of law *de novo*. *Farm Bureau v. Cully's Motorcross Park*, 366 N.C. 505, 512, 742 S.E.2d 781, 786 (2013).

### B. Analysis

Defendant challenges the following findings of fact:

> 17. Father has had a successful banking career and has attained a superior education, with an undergraduate and masters degrees (sic) from Ivy League schools;
>
> 18. Since 2011, Father has borrowed money from his mother for litigation expenses and living expenses. The terms of these loans were extremely favorable to Father. The Promissory Notes from 2011-2020 obligate Father to pay interest only, with interest rates from 1.51% to 2.5%. These interests (sic) rates were at all times below the Bank Prime lending rate, which ranged from 3.25% to 5.5% during this time period, per the Federal Reserve Bank and the Wall Street Journal.
>
> . . .
>
> 23. The Charlotte area is well-known as a banking center, and public data from the Bureau of Labor Statistics indicates substantial employment opportunities in banking and finance.

The record indicates Defendant received degrees from the University of California, Los Angeles ("UCLA"). At the time of the hearing and the time of this opinion, UCLA is a member of the Pac-12 Conference, and scueduled to join he Bit

Ten Conference on 2 August 2024. The Ivy League is a conference of eight schools located in the Northeastern United States. UCLA has been referred to as a "public ivy" by Richard Moll in *Public Ivies: A Guide to America's Best Public Undergraduate Colleges and Universities* and Howard and Matthew Greene in *The Public Ivies: America's Flagship Public Universities.* Although UCLA has been referred to by some as a "public ivy," it is not in the Ivy League conference.

Defendant testified the debt he incurred to his mother was spent on litigation expenses. ("It's entirely gone to litigation."). Unchallenged findings of fact show Defendant received a purchase money loan in the amount of $663,000.00 with an interest rate of 1.51%.

Defendant further argues the district court erred in taking purported judicial notice of "substantial opportunities in banking and finance" to exist after Defendant testified a bank in Charlotte was undergoing layoffs and restructuring. The evidence presented by Defendant was contradictory to the finding of which the district court had received no other evidence, but which determined by taking judicial notice.

North Carolina General Statutes allow courts to take judicial notice of adjudicative facts, which are "not subject to reasonable dispute in that [they] are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." N.C. Gen. Stat. § 8C-1, Rule 201(b) (2023). The Official Commentary to N.C. Gen. Stat. § 8C-1, Rule 201(b) provides: "With respect

to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy." N.C. Gen. Stat. § 8C-1, Rule 201(b) N.C. Commentary (2023).

In *Thompson v. Shoemaker*, 7 N.C. App. 687, 690, 173 S.E.2d 627, 630 (1970) this Court denied a request to take judicial notice "of the scarcity of low income housing in the City of Charlotte[,]" because "the unavailability of low income housing in Charlotte is undoubtedly subject to debate and in our opinion it is not a factor that can be judicially noticed by this court." *Id.*

This Court in *Hinkle v. Hartsell*, 131 N.C. App. 833, 837, 509 S.E.2d 455, 458 (1998), applied the holding in *Thompson* in a custody case where the trial court took purported judicial notice that an area of Charlotte was a "high crime area." This Court held this finding was also error because "the prevalence of crime in and about the premises of the [Charlotte neighborhood], and how this crime affects the safety of its residents, is no doubt a matter of debate within the community." *Id.*

In the absence of substantial competent evidence, the trial court erred in finding by purportedly "judicially noticing" there were "substantial employment opportunities in banking and finance." Because the findings challenged by Defendant where the district court took judicial notice are crucial to the ultimate determination of the district court, the order of the district court is vacated. In light of our vacating the trial court's order, we need not address Defendant's remaining arguments, other than the imputation of Defendant's capacity to earn income, which may recur on

remand. We address this argument.

## V. Imputing Income

Defendant argues the trial court erred in imputing income to him.

## A. Standard of Review

"Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion." *Leary v. Leary*, 152 N.C. App. 438, 441, 567 S.E.2d 834, 837 (2002). When this Court reviews for an abuse of discretion:

> the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision. The trial court must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law.

*Spicer v. Spicer*, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005) (citations omitted).

## B. Analysis

Defendant argues the district court erred by imputing income after finding his capacity or ability to earn "$20,000.00 per month or more and his failure to seek employment in good faith." Defendant argues no evidence exists of his bad faith suppression of income to avoid paying child support.

N.C. Gen. Stat. § 50-13.4(c) determines child support payments and provides:

> Payments ordered for the support of a minor child shall be

> in such amount as to meet the reasonable needs of the child for health, education, and maintenance having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, . . . and other facts of the particular case.

N.C. Gen. Stat. § 50-13.4(c) (2023).

Our Supreme Court has stated:

> In determining the amount of . . . child support to be awarded the trial judge must follow the requirements of applicable statutes. . . . Ordinarily the husband's ability to pay is determined by his income at the time the award is made if the husband is honestly engaged in a business to which he is properly adapted and is in fact seeking to operate his business profitably. Capacity to earn, however, may be the basis of an award if it is based upon a proper finding that the husband is deliberately depressing his income or indulging himself in excessive spending because of a disregard of his marital obligation to provide reasonable support for his wife and children.

*Beall v. Beall*, 290 N.C. 669, 673-74 228 S.E.2d 407, 410 (1976) (internal quotations and citations omitted).

"Only when there are findings based on competent evidence to support a conclusion that the supporting spouse or parent is deliberately depressing his or her income or indulging in excessive spending to avoid family responsibilities, can a party's capacity to earn by considered." *Atwell v. Atwell*, 74 N.C. App. 231, 235, 328 S.E.2d 47, 50 (1985) (citations omitted).

A trial court may only impute capacity to earn income to base an award of child support after the trial court has found the parent has disregarded his parental

obligations by:

> (1) failing to exercise his reasonable capacity to earn, (2) deliberately avoiding his family's financial responsibilities, (3) acting in deliberate disregard for his support obligations, (4) refusing to seek or to accept gainful employment, (5) wilfully (sic) refusing to secure or take a job, (6) deliberately not applying himself to his business, (7) intentionally depressing his income to an artificial low, or[,] (8) intentionally leaving his employment to go into another business.

*Wolf v. Wolf*, 151 N.C. App. 523, 526-27, 566 S.E.2d 516, 518-19 (2002).

This Court has held "evidence of a voluntary reduction in income is insufficient, without more, to support a finding of deliberate income depression or bad faith." *Pataky v. Pataky*, 160 N.C. App. 289, 307, 585 S.E.2d 404, 416 (2003) (citations omitted).

Defendant's employment was involuntarily terminated in June 2019, as his position with the company was eliminated. Defendant was given a severance package of one year's salary on 25 July 2019. Defendant presented evidence he had moved from Los Angeles to Charlotte to be closer to his children and to begin learning new skills to expand the potential pool of employers. The evidence presented to the trial court was Defendant had submitted many applications seeking employment in Charlotte and was not refuted. Defendant did not act in a willful disregard for his support obligations. *Id.* None of the other *Wolf* factors apply. *Wolf*, 151 N.C. App. at 526-27, 566 S.E.2d at 518-19. The district court erred in imputing capacity to earn income to Defendant.

## VI.    Conclusion

At least two of the parties' children have reached the age of majority and the other will reach the age of majority later this year.  The district court abused its discretion in taking judicial notice of purported undisputed adjudicative facts pertaining to the job market in banking and finance in the Charlotte metropolitan area.  The district court also erred in imputing capacity to earn income to Defendant by improperly finding without a basis that he had acted in bad faith to depress his income.

Canon 3B(1) of the North Carolina Code of Judicial Conduct requires a judge to "diligently discharge the judge's administrative responsibilities[.]"  The prejudice to the parties by the delay in filing the order is obvious.  Upon remand, the district court is to make findings of fact to explain the twenty-one month delay after hearing in the entry of the prior order.

The permanent order is vacated and remanded for further proceedings.  *It is so ordered.*

VACATED AND REMANDED.

Judges MURPHY and WOOD concur.